UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID KLEIN and ALL BROTHERS
INVESTMENTS, LLC,

      Plaintiffs,                                           Case No. 09-14688

v.                                                             Honorable Patrick J. Duggan

CITY OF JACKSON,

      Defendant.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 18, 2010.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On December 1, 2009, David Klein and All Brothers Investments, LLC ("All Brothers") filed this lawsuit against the City of Jackson ("City") alleging two separate Fourteenth Amendment claims. The City has since filed a motion to dismiss or, in the alternative, for summary judgment. The motion has been fully briefed and the Court heard oral argument on August 17, 2010.

**I. Factual and Procedural Background**

This action arises out of the City's attempted enforcement of city ordinances designated as blight violations against Klein and All Brothers (collectively "plaintiffs"). Michigan law permits cities meeting certain specifications to "establish an administrative hearings bureau

to adjudicate and impose sanctions for violations of the [city's] charter or ordinances designated in the charter or ordinance as a blight violation." Mich. Comp. Laws Ann. § 117.4q; *see also id.* §§ 117.4*l*, 117.4r. Pursuant to this law, the City adopted an ordinance effective January 1, 2005, establishing an Administrative Hearings Bureau ("AHB") for the enforcement of various ordinances therein designated as blight violations. (*See* City's Mot. Ex. B.)

The City's AHB is run by an administrative hearings officer who is appointed by the City's mayor for two-year terms subject to the consent and approval of city counsel. (*Id.* § 2.5-11.) The hearings officer must be an attorney admitted to practice law in Michigan, must have been admitted for at least five years, must meet certain training requirements, and is removable only for reasonable cause. (*Id.* §§ 2.5-13 to 2.5-14.) The hearings officer is compensated by the City at a rate set forth in a separate city ordinance. (*Id.* § 2.5-11.) Fines imposed by the hearings officer are payable to the city clerk. (*Id.* § 2.5-28.) The hearings officer's decisions are appealable to the Jackson County Circuit Court. (*Id.* § 2.5-25.) Upon expiration of the period in which review may be sought, an order of the hearings officer may be enforced in the same manner as a judgment entered by a court. (*Id.* § 2.5-26); *see also* Mich. Comp. Laws Ann. § 117.4q(16). The AHB is physically located in City Hall, the same building that houses the City's Building & Safety and Law Departments.

All Brothers owns commercial property located within the City. Klein is the organizer and resident agent of All Brothers. Sometime during the summer of 2008, All Brothers commenced construction on its property. On July 31, 2008, the City's Chief Building Official observed this construction and, on August 5, 2008, issued three violations based on

2

commencement of the work without a permit. (City's Mot. Ex. F.) The violations specifically concerned the erection of new steel structures, work on accessory structures, and construction of a fence. (*Id.*) The Chief Building Official posted the violations, notice of a hearing on September 10, 2008, and a stop work order at the property. (*Id.*) All Brothers failed to appear for the September 10 hearing, resulting in an entry of default. (City's Mot. Ex. G.) Before a default judgment was issued, however, All Brothers's counsel filed an appearance in the case and obtained an order setting aside the entry of default. (*Id.*)

All Brothers then began to pursue the permits necessary for it to continue the work on its property. While waiting for approval from the Michigan Department of Environmental Quality ("MDEQ"), however, All Brothers resumed its construction activities. The City's Chief Building Official learned of the work and issued four new violations on November 14, 2008. (City's Mot. Ex. K.) The new violations were based on the same three grounds as the first set plus a violation for continuing construction in violation of the stop work order. (*Id.*) All Brothers received notice of a hearing scheduled for January 14, 2009. (*Id.*) The new violations were combined with the first three and adjourned pending approval from the MDEQ. (City's Mot. Ex. L.)

Ultimately the seven violations were scheduled for trial before the AHB's hearings officer on August 19, 2009. (City's Mot. Ex. M.) On August 18, 2009, counsel for All Brothers and Klein submitted a notice to the AHB that he had been advised by his clients not to attend the trial. (City's Mot. Ex. N.) As such, the trial proceeded without the participation of All Brothers and Klein and judgments were entered against All Brothers in the amount of $1,011.76 for the first three violations and $1,432.34 for the latter four violations. (City's

3

Mot. Ex. O.)

Upon expiration of the period for appeal to the Jackson County Circuit Court, the City sent letters to All Brothers directed to the attention of Klein seeking compliance with the judgments. Letters sent on October 6, 2009, advised Klein that the judgments had been recorded with the Register of Deeds, creating liens against the property that could be removed upon payment of the judgments at the city clerk's office. (City's Mot. Ex. P.) The letter also warned that the City could pursue other collection efforts such as contempt, which could result in up to 90 days of jail time. (*Id.*) Letters sent on November 10, 2009, advised that the judgments would be sent to a collections agency if not paid by December 10, 2009. (City's Mot. Ex. Q.) As previously indicated, plaintiffs filed this lawsuit on December 1, 2009, challenging the constitutionality of the City's conduct and the use of the AHB to adjudicate blight violations.

## II. Standards of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949

(2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to unsupported legal conclusions. *Iqbal*, 129 S. Ct. at 1950. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 504, 514 (6th Cir. 1999).

Meanwhile, summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant for summary judgment has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

**III. Fourteenth Amendment Due Process: Partiality**

In the first count of the Complaint, plaintiffs allege that the City's AHB violates due

process "in the failure to provide a neutral, authorized actual court, the failure to separate the executive administrative, and investigative functions with the judicial function, and the failure to provide a neutral judge to determine the proceedings, whose tenure and pay was not dependent on the levying of fines . . . ." (Compl. ¶ 12.) Additionally, Klein alleges that his due process rights were violated when he was threatened with incarceration despite not having been issued a violation, provided a hearing and adjudication, or found liable in any way. (*Id.*) The City seeks dismissal or summary judgment as to both allegations.

In the briefing of the present motion, plaintiffs' precise complaints have crystallized into a number of allegations through which plaintiffs attempt to establish unconstitutional partiality on behalf of the AHB and its hearings officer. Among other things, plaintiffs allege that the AHB only hears matters presented by the City, does not require the City to pay a filing fee, imposes fines against respondents that are then used to compensate the hearings officer, never imposes fines against the City, and has its offices in the same building as the City's Building & Safety and Law Departments. (*See* Pls.' Resp. at 3-7.) Additionally, the AHB's hearings officer is selected and can only be removed by the City. (*Id.*) Upon examination, these allegations fail to give rise to a due process violation.

Most of the circumstances referred to by plaintiffs fail to rise to the level of constitutional issues. For example, there is no outright constitutional prohibition on the combination of executive and judicial functions in one office. *DePiero v. City of Macedonia*, 180 F.3d 770, 777 (6th Cir. 1999).[1] Additionally, courts have regularly upheld, in the face

---

[1] What is more, plaintiffs fail to present evidence demonstrating that the AHB engages in executive functions for the City.

7

of constitutional challenges, comprehensive regulatory schemes at administrative levels for the enforcement of civil ordinances. *See, e.g.*, *Gardner v. City of Columbus, Ohio*, 841 F.2d 1272, 1273-78 (6th Cir. 1988) (upholding administrative enforcement of city parking ordinances, including assessments of fines, penalties, and costs). Finally, the Supreme Court has advised that "matters of kinship, personal bias, state policy, [and] remoteness of interest would seem generally to be matters merely of legislative discretion." *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 441 (1927); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2267 (2009) ("Application of the constitutional standard implicated in this case will thus be confined to rare instances.").

Even so, "[a] fair trial in a fair tribunal is a basic requirement of due process," *in re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625 (1955), and "it certainly violates the Fourteenth Amendment and deprives a defendant . . . of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." *Tumey*, 273 U.S. at 523, 47 S. Ct. at 441. As such, a denial of due process exists in "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused . . . ." *Id.*, 273 U.S. at 532, 47 S. Ct. at 444. The test for such partiality is an objective one independent from the amount of evidence against the accused, the availability of an impartial review mechanism, or the existence of actual, subjective bias on behalf of the adjudicator. *See id.*, 273 U.S. at 535, 47 S. Ct. at 445; *Ward v. Vill. of Monroeville, Ohio*, 109 U.S. 57, 61, 93 S. Ct. 80, 84 (1972);

8

*Caperton*, 129 S. Ct. at 2262 (2009).

Applying these standards, the Supreme Court has twice found due process violations in the context of "mayor's courts." In *Tumey v. Ohio* the mayor of a village functioned as the judge of a court responsible for the adjudication of alleged violations of the state's Prohibition Act. *Tumey*, 273 U.S. at 514-15, 47 S. Ct. at 439. The administrative scheme of that mayor's court provided a salary supplement to the mayor only in the event that he convicted and imposed fines on those brought before him. *Id.*, 273 U.S. at 520, 47 S. Ct. at 440. The fines also funded the village's general funds, over which the mayor possessed executory authority. *Id.*, 273 U.S. at 532-33, 47 S. Ct. at 444-45. The Supreme Court held that the mayor's personal pecuniary interests in obtaining a salary supplement and maintaining a well-funded village treasury rendered that mayor's court a violation of constitutional due process. *Id.*, 273 U.S. at 531-34, 47 S. Ct. at 444-45.

Similarly, in *Ward v. Village of Monroeville, Ohio*, the Supreme Court found unconstitutional a mayor's court charged with the adjudication of ordinance violations and certain traffic offenses. *Ward*, 409 U.S. at 57, 93 S. Ct. at 82. Although the mayor in *Ward* received no salary supplement for his service as judge, the fines, forfeitures, costs, and fees imposed in the mayor's court regularly provided more than one-third of the village's annual revenue. *Id.*, 409 U.S. at 58, 93 S. Ct. at 82. Like the mayor in *Tumey*, the mayor in *Ward* retained executive responsibility for village finances, rendering his operation of the mayor's court unconstitutional. *Id.*, 409 U.S. at 60, 93 S. Ct. at 83. Plaintiffs rely on these cases to support their argument that the City's use of the AHB violates due process.

To fully understand Supreme Court precedent on such partiality issues, however, one

must also consider *Dugan v. Ohio*, 277 U.S. 61, 48 S. Ct. 439 (1928). Involving yet another mayor's court, the appellant in *Dugan* complained that the mayor:

> had power under the law to convict persons without a jury of the offense of the possession of intoxicating liquor and punish them by substantial fines, half of which were paid into the city treasury, and as a member of the city commission he had a right to vote on the appropriation and the spending of city funds; and further that, while he received only a fixed salary and did not receive any fees, yet all the fees taxed and collected under his convictions were paid into the city treasury, and were contributions to a general fund out of which his salary as mayor was payable.

*Id.*, 277 U.S. at 62-63, 48 S. Ct. at 439. In concluding that this arrangement *did not* violate due process, the Supreme Court emphasized that the mayor in *Dugan* accounted for only one of five votes on the city commission that exercised legislative and executive powers. Furthermore, the mayor's salary, while "paid out of a [general] fund to which fines accumulated," was "not dependent on whether he convicts in any case or not." *Id.*, 277 U.S. at 65, 48 S. Ct. at 440. The Supreme Court held that these circumstances sufficiently distinguished the mayor's court in *Dugan* from those in *Tumey* and *Ward* so as to satisfy the requirements of due process. *Id.*; *Ward*, 409 U.S. at 60, 93 S. Ct. at 83 ("This situation is wholly unlike that in *Dugan* . . . .").

Analyzing an administrative hearing process much like the one presented in this case, the Seventh Circuit persuasively applied the above-described precedents to uphold the administrative scheme in *Van Harken v. City of Chicago*, 103 F.3d 1346 (7th Cir. 1997). At issue in *Van Harken* was Chicago's method of using private lawyers hired by Chicago's Department of Revenue as part-time hearing officers to adjudicate challenges to parking tickets. *Id.* at 1350, 1352. The plaintiffs therein objected "to the fact that the hearing officers

10

are hired by, and can be fired at will by, the City's Director of Revenue, who may want to maximize the City's 'take' from parking tickets." *Id.* at 1352.

The Seventh Circuit wholly rejected any claim that such circumstances give rise to unconstitutional partiality on behalf of the hearing officers:

> [W]e do not think that the adjudicative reliability of the hearing officers is fatally compromised by the manner of their appointment and by their lack of secure tenure. The officers are not paid by the number of hearings that they resolve against the respondent; they are not paid any portion of the fines they impose . . . ; they have no quota of fines that they must impose on pain of losing their jobs or having their pay reduced; and they have no other financial stake in the outcome of the cases that they adjudicate . . . . If their very indirect, very tenuous stake (a fear that if a hearing officer lets off too many alleged parking violators, the Director of Revenue may get angry and fire him) were enough to disqualify them on constitutional grounds, elected judges, who face significant pressure from the electorate to be "tough" on crime, would be disqualified from presiding at criminal trials, especially in capital cases. They are not.

*Id.* at 1352-53 (citations omitted).[2] The court further distinguished the administrative scheme from the mayor's court in *Ward* noting that "the hearing officers have no municipal governmental responsibilities" and that there was no indication that a substantial portion of Chicago's revenues derived from fines imposed by the hearing officers. *Id.* at 1353.

The challenge to the AHB presented in this case closely mirrors that in *Van Harken*. The city ordinance creating the AHB provides for the appointment of a hearings officer by the mayor with the approval of city council. (City's Mot. Ex. B § 2.5-11.) The appointee

---

[2]The Sixth Circuit reached the same result in a much more cursory fashion in *Gardner v. City of Columbus, Ohio*, 841 F.2d at 1278 ("Appellants' argument that the hearing officers are somehow biased employees of the city is countered by the stipulated fact that the hearing officers are 'duly licensed Ohio attorneys appointed as hearing officers by the Columbus City Treasurer who are hired on an independent contractor basis' . . . .").

11

serves a term of two years, is removable only upon reasonable cause, receives compensation at a separately established rate, and imposes fines payable to the city clerk. (*Id.* §§ 2.5-11, 2.5-28.) Plaintiffs provide no evidence that the hearings officer's compensation is dependent on the number of hearings resolved against respondents, that she directly receives any portion of the fines imposed, that she must meet a quota to retain her job or compensation, that she possesses executive authority within the City, or that the fines she imposes supply a substantial portion of the City's annual revenue. In short, there is a lesser risk of partiality here than in the mayor's court upheld in *Dugan* by the Supreme Court. Plaintiffs, therefore, cannot establish a due process violation based on the partiality of the AHB and its hearings officer.

Finally there is Klein's allegation that the City deprived him of his due process rights by threatening him with incarceration without previously adjudicating him liable as an individual. Other than making conclusory statements that he was denied due process, Klein presents no other legal argument in support of this claim. To succeed on a procedural due process claim, however, Klein must demonstrate:

> (1) that [he] had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that [he] was deprived of that protected interest within the meaning of the due process clause; and (3) that the [City] did not afford [him] adequate procedural rights before depriving [him] of [his] protected interest.

*Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).[3] There

---

[3] It remains unclear whether Klein's allegations are intended to give rise to a procedural or a substantive due process claim. To the extent Klein attempts to raise a substantive due process claim, it also fails. "[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience

is no dispute in this case that Klein was never actually incarcerated. Therefore, the Court grants the City's motion as to this count.[4]

**IV. Fourteenth Amendment Equal Protection: Discriminatory Enforcement**

In the second count of the Complaint, plaintiffs allege that the City arbitrarily and discriminatorily enforced the building code against them so as to violate the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074 (2000). In the latter "class of one" claims, "[t]he threshold element . . . is disparate treatment . . . ." *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Plaintiffs must then establish a lack of a rational basis for the disparate treatment "either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will."

---

shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717 (1988) (*quoting Collins v. Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 1070 (1992)). Klein presents no argument or legal support indicating that a letter describing various enforcement mechanisms available to the City, including limited incarceration, can, without more, properly be characterized as arbitrary or conscience shocking.

[4]The City dedicates a significant portion of its motion to arguments regarding procedural due process, specifically addressing the procedural protections afforded to respondents charged with blight violations. In response plaintiffs failed to argue specific procedural deficiencies aside from the alleged partiality and general unconstitutionality of the AHB itself and the threatened incarceration of Klein. As such, plaintiffs have abandoned any other procedural due process claims.

*Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (internal quotation omitted).

Although plaintiffs allege discriminatory enforcement of the City's blight ordinances, they fail in the first instance to present evidence of disparate treatment. Attached to plaintiffs' response are pictures of a number of properties in various stages of disarray within the City. (*See* Pls.' Resp. Exs. 3-11.) The violations in this case, however, were not issued based on the disarray of the property; the violations were issued based on the performance of construction work without permits and in violation of a stop work order.[5] (*See* City's Mot. Exs. F, K.) The pictures attached to plaintiffs' response do not appear to reflect the performance of construction work and, even if they did, it would be impossible to tell from the pictures alone whether the construction was being performed without permits. Without evidence of disparate treatment, plaintiffs have failed to present sufficient evidence upon which a jury could reasonably find for them. *See Ross v. Duggan*, 402 F.3d 575, 587 (6th Cir. 2004) ("Clark has failed to identify, either in the Amended Complaint or in the plaintiffs' opposition to the summary judgment motion, *any* specific taxicab operator who was similarly situated to Clark, yet received comparatively favorable treatment."). Therefore, the City is entitled to dismissal of the equal protection claim.

**V. Conclusion**

Viewing the evidence in the light most favorable to plaintiffs, they have failed to

---

[5]At various points in their response, plaintiffs object to the expansive definition of "blight violation" adopted by the City which includes "a violation of any provision of this Code, regarding zoning, building or construction, building or property maintenance or condition in buildings or on the premises . . . ." (City's Mot. Ex. B § 2.5-2.) If this objection is intended to give rise to a separate constitutional claim, plaintiffs failed to include it in the Complaint and also fail to develop it with legal support in their response brief.

establish violations of the Fourteenth Amendment. Specifically, plaintiffs failed to demonstrate that the City's AHB and hearings officer are subject to such a risk of impartiality as to violate due process. Additionally, plaintiffs failed to present evidence of disparate treatment in support of their equal protection claim.

Accordingly,

**IT IS ORDERED** that the City's motion to dismiss or, in the alternative, for summary judgment is **GRANTED**.

A judgment consistent with this order shall enter.

                                               s/PATRICK J. DUGGAN
                                               UNITED STATES DISTRICT JUDGE

Copies to:
Frank G. Becker, Esq.
James E. Tamm, Esq.
Richard V. Stokan, Jr., Esq.